Of Counsel:
PORTER MCGUIRE KIAKONA, LLP

CHRISTIAN P. PORTER        3744-0
JASON K. ADANIYA           10366-0
TIFFANY J. AUKAI           11341-0
841 Bishop Street, Suite 1500
Honolulu, Hawaii 96813
Telephone No.: (808) 539-1100
Facsimile No.: (808) 539-1189
Email:  cporter@HawaiiLegal.com
        jadaniya@HawaiiLegal.com
        taukai@HawaiiLegal.com

YOSHIDA & SUH, LLP
DAVID Y. SUH               7317-0
841 Bishop Street, Suite 2125
Honolulu, Hawaii 96813
Telephone No.: (808) 539-1135
Facsimile No.: (808) 523-1171
Email:  dsuh@yspaclaw.com

Attorneys for Plaintiff
JAEWOO CHUNG

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JAEWOO CHUNG, | CIVIL NO. |
| Plaintiff, | **COMPLAINT; SUMMONS** |
| vs. | |
| JB BROTHERS, INC., a California corporation; KWANG S. LIM, also known as CHRIS LIM; JOHN DOES 1-10; JANE DOES 1-10; DOE | (CAPTION CONTINUED TO NEXT PAGE) |

PARTNERSHIPS 1-10; DOE
CORPORATIONS 1-10; and DOE
ENTITIES 1-10,

        Defendants.

_____

## COMPLAINT

Plaintiff JAEWOO CHUNG (hereinafter "**Plaintiff**"), by and through

his attorneys, Porter McGuire Kiakona, LLP and Yoshida & Suh, LLP, for a

Complaint against Defendants JB BROTHERS, INC., a California corporation,

doing business as Poke Bar, and KWANG S. LIM, also known as CHRIS LIM

(hereinafter collectively, "**Defendants**"), alleges and avers as follows:

## PARTIES

1.     Plaintiff is an individual residing in the City and County of

Honolulu, State of Hawaii.

2.     Upon information and belief, Defendant JB BROTHERS, INC.

(hereinafter "**Defendant JB**") is a California corporation with its principal place of

business located in Los Angeles, State of California, and Defendant JB conducts

business in the State of Hawaii.

3.     Upon information and belief, Defendant KWANG S. LIM, also

known as CHRIS LIM (hereinafter "**Defendant Lim**"), while being a resident of

the State of California, is conducting business in the State of Hawaii.

4.     Defendants JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and DOE ENTITIES 1-10, are individuals, corporations, partnerships, or other entities who contributed to losses and damages sustained by Plaintiff; who acted in concert or in conspiracy with Defendants; who are also responsible for the harms claimed by Plaintiff herein; or, who otherwise are liable with Defendants in this action, but whose names and full extent of participation are currently unknown to Plaintiff despite a good faith effort to ascertain same, and Plaintiff seeks leave to insert herein when the same is reasonably ascertained.

## JURISDICTION AND VENUE

5.     Jurisdiction is proper under 28 U.S.C. section 1332 in that Plaintiff and Defendants are citizens of different states (Plaintiff being a citizen of Hawaii and Defendants being citizens of California) and the amount in controversy exceeds $75,000.

6.     Jurisdiction is also proper under Hawaii's Franchise Investment Law, which provides in part: "[a]ny person who is engaged or hereafter engaged directly or indirectly in the sale of a franchise or in business dealings concerning a franchise, either in person or in any other form of communication, shall be subject to this chapter, shall be amenable to the jurisdiction of the courts of this State, and

shall be amenable to the service of process as provided by law and rule." Haw. Rev. Stat ("HRS") § 482E-5(c).

7.    Venue is proper under 28 U.S.C. section 1391 (b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in the District of Hawaii, and Defendants conduct business in the State of Hawaii.

<u>**FACTS COMMON TO ALL COUNTS**</u>

8.    Defendant JB is engaged in the business of operating and issuing franchises for quick service restaurants under the word mark of "POKÉ BAR" (hereinafter "**Poke Bar**"). Defendant JB has represented itself to be the owner of the registered trademark or word mark "Poke Bar", but instead has registered the word mark or trademark of "POKÉ BAR DICE & MIX".

9.    Upon information and belief, Yoon Ho Ju (hereinafter "**YH Ju**") and Seung Park, also known as Seungnam Park and Jason Park (hereinafter "**S Park**"), are principals and/or owners of Defendant JB.

10.    Upon information and belief, Defendant Lim is a Poke Bar franchisee, owns several Poke Bar restaurants, and acts as an agent and/or regional manager for Defendant JB in the State of Hawaii.

11.    In 2016, Plaintiff discussed opening a Poke Bar location on the island of Oahu with YH Ju, S Park, and Defendant Lim, which after such discussions and representations led to Plaintiff opening a Poke Bar restaurant in

Waikiki with the assistance of loans from YH Ju, S Park and Defendant Lim.

12.    Effective December 9, 2016, Defendant JB, as licensor, and Plaintiff, as licensee, entered into a License Agreement for "Poke Bar" (hereinafter "**License Agreement**").  The License Agreement granted Plaintiff the right to sell food products bearing the trademark "Poke Bar" for a term of ten (10) years, commencing from the date of establishment of a Poke Bar restaurant by Plaintiff, and further granted Plaintiff the right to a five-mile exclusive territory, in which no other Poke Bars could open without his prior written approval.

13.    Pursuant to the License Agreement, Plaintiff paid Defendant JB a $25,000.00 licensing fee, and did so relying on the representation that Plaintiff, among other things, would be able to operate a Poke Bar for ten years in an exclusive five-mile radial territory.

14.    Pursuant to the License Agreement, and in addition to the licensing fee, Plaintiff has made and continues to make monthly royalty payments to Defendant JB based on a percentage of Plaintiff's total gross sales.  To date, Plaintiff has paid over $300,000 to Defendant JB in monthly royalty payments, and did so relying on the representation that, among other things, Plaintiff would be able to operate a Poke Bar for ten years in an exclusive five-mile radial territory.

15.    The License Agreement is a "franchise" under Hawaii law as set forth in HRS § 482E-2, which defines a "franchise" as "an oral or written

5

contract or agreement, either expressed or implied, in which a person grants to another person, a license to use a trade name, service mark, trademark, logotype or related characteristic in which there is a community interest in the business of offering, selling, or distributing goods or services at wholesale or retail, leasing, or otherwise, and in which the franchisee is required to pay, directly or indirectly, a franchise fee."

16.    Prior to entering into the License Agreement, Defendant JB did not present an offering circular to Plaintiff as required by HRS § 482E-3.

17.    Upon information and belief, prior to entering into the License Agreement and unbeknownst to Plaintiff, Defendant JB did not file a copy of the offering circular with the Director of Commerce and Consumer Affairs, State of Hawaii, as required by HRS § 482E-3(c).

18.    As of February 15, 2017, Plaintiff incorporated a business entity named Mymulgogi, Inc. as a Hawaii corporation ("**MMGG**").

19.    Plaintiff is the sole officer, director and shareholder of MMGG.

20.    On or about June 30, 2017, MMGG, as tenant, entered into a Retail Space Lease ("**Lease**") with ABW Holdings LLC to lease a retail space (Space No. L-106) in the Waikiki Beach Walk project for its Poke Bar restaurant. Plaintiff entered into the Lease relying on, among other things, his right to operate a Poke Bar for ten years and to be the only Poke Bar within a five-mile radius.

21.     The Lease was signed by Plaintiff as the president of MMGG and by Defendant Lim as a "partner" of MMGG.

22.     In October 2017, Plaintiff opened a Poke Bar restaurant at the Waikiki Beach Walk situated at 226 Lewers Street #L106, Honolulu, Hawaii 96815 ("**Poke Bar Lewers**").

23.     To financially assist Plaintiff with opening Poke Bar Lewers, YH Ju, S Park and Defendant Lim each loaned to Plaintiff $55,000, $55,000, and $45,000, respectively, for a total of $155,000 (collectively, "**Initial Loans**").  The Initial Loans from YH Ju, S Park, and Defendant Lim were not documented by promissory notes, and covered about half of Poke Bar Lewers' start-up costs, with Plaintiff funding the remainder.

24.     Based on Plaintiff's trust and discussions with YH Ju and S Park, Plaintiff repaid YH Ju and S Park their respective $55,000 portions of the Initial Loans by paying each of them $110,000, for a total of $220,000, within 28 months of the October 2017 opening of the Poke Bar Lewers.  There was no documentation to support repayment to YH Ju's and S Park's request for payment of two (2) times the loan amounts made to Plaintiff.

25.     Based on Plaintiff's trust and discussions with Defendant Lim, Plaintiff repaid Defendant Lim his $45,000 portion of the Initial Loans by paying him $250,000 within 54 months from the October 2017 opening of the Poke Bar

Lewers.  There was no documentation to support Defendant Lim's request for payment of over five (5) and one-half (1/2) times the loan he gave to Plaintiff.

26.    Plaintiff only invested these substantial sums of money because he believed, among other things, his investment would be capable of providing returns for at least ten years, relying on his rights under the License Agreement to operate a Poke Bar for ten years and to be the only Poke Bar within a five-mile radius.

27.    Initially, Poke Bar Lewers' business operations did not turn a profit.  Only through Plaintiff's efforts, Poke Bar Lewers became profitable in 2019, approximately 18 months after opening.

28.    Contrary to Defendant JB's representations and Plaintiff's understanding of the support he would receive to successfully operate Poke Bar Lewers, Plaintiff did not have the promised support from Defendant JB and Plaintiff instead had to find the ingredients and consumables he would use; find, vet, and engage the suppliers for the same; and learn how to incorporate fresh tuna into the business, including sourcing, managing inventory, managing costs, and hiring experienced fish cutters.

29.    Despite Plaintiff paying to Defendant JB licensing and royalty fees – and exorbitant loan repayment amounts, and despite Defendant JB's promise to provide training, supervision, and assistance to franchisees under the License

Agreement, Defendant JB did not provide any assistance to or share any knowledge with Plaintiff with regard to any of these crucial aspects of Plaintiff's business/franchise.

30.    Despite Defendant JB's promise to maintain a bona fide interest in the success of Plaintiff's business under the License Agreement, Defendant JB had very limited involvement in Poke Bar Lewers.  Reflective of Defendant JB's level of interest in the success of Poke Bar Lewers, Defendant JB communicated with Plaintiff on only two or three occasions in the over five (5) years Poke Bar Lewers has been open.

31.    Further, despite providing Plaintiff with franchisee material indicating Plaintiff would "benefit from . . .  certain national or regional marketing and advertising efforts," Defendant JB did not provide any marketing or promotional support to Plaintiff anywhere in the State of Hawaii.

32.    Due in large part to the lack of support from Defendant JB, it was Plaintiff's sole efforts, in learning the business of fresh tuna, finding and sourcing ingredients, and building good-will and brand awareness, that allowed Poke Bar Lewers to become a profitable business.

33.    Plaintiff has invested substantial time, money, and effort to make Poke Bar Lewers profitable and to establish a successful "Poke Bar" presence in Hawaii.

34.     In early 2022, Defendant Lim proposed to Plaintiff that he open a second Poke Bar in Waikiki, but Plaintiff declined.  The location at which Defendant Lim proposed Plaintiff open this Poke Bar is the same location at which Defendant Lim would later open a competing Poke Bar (Poke Bar Waikiki) with Defendant JB's knowledge/consent.

35.     In August 2022, Defendant Lim emailed a representative of the lessor to the Poke Bar Lewers' Lease, stating that parts of Poke Bar Lewers were not up to par and of poor quality, and that there were staffing issues.  None of these statements were true.

36.     Upon information and belief, to facilitate the opening and operation of a competing poke selling restaurant, Registrant Bay Hae Inc. registered the trade name "Poke Bar Waikiki" with the State of Hawaii Department of Commerce & Consumer Affairs in September of 2022.

37.     Upon information and belief, the registered agent for Bay Hae Inc. is Defendant Lim.

38.     Upon information and belief, Defendant Lim is a member and/or manager of Bay Hae Inc., and through his position, controls Bay Hae Inc.

39.     Upon information and belief, and with the support and knowledge of Defendant JB, Defendant Lim proceeded to establish a second Poke Bar location in Waikiki (Poke Bar Lewers being the first) by securing a retail

location and opening a poke selling restaurant at 2526 Kalakaua Avenue,

Honolulu, Hawaii 96815 using the "Poke Bar Waikiki" trade name registered by

Bay Hae Inc. (hereinafter "**Poke Bar Waikiki**").

40.     Signage outside of Defendant Lim's Poke Bar Waikiki location

utilize the name "POKÉ BAR", as well as the Poke Bar service mark that

Defendant JB registered with the United States Patent and Trademark Office under

registration number 5006193.

41.     Plaintiff's License Agreement's covenant not to compete clause

provides that Defendant JB is restricted from granting a Poke Bar license and

establishing another Poke Bar restaurant within 5 miles of Poke Bar Lewers,

without first obtaining Plaintiff's written approval.

42.     The second Poke Bar location in Hawaii, Poke Bar Waikiki, is

less than a 1-mile walk from Poke Bar Lewers.

43.     Upon information and belief, Defendant Lim's opening and

operation of Poke Bar Waikiki is with the acknowledgement, acquiescence, and/or

approval of Defendant JB.

44.     Defendants have not sought the prior written consent of

Plaintiff for, and Plaintiff has not consented to, the opening of Poke Bar Waikiki.

45.     Plaintiff has complied and continues to comply with all of his

material obligations under the License Agreement, including the payment of all

royalty fees.

## COUNT I
## (Breach of Contract - Defendant JB)

46.    The allegations contained in paragraphs 1 through 45 herein are realleged and incorporated by reference.

47.    Under the terms of the License Agreement, Defendant JB is restricted from granting a license for a Poke Bar restaurant and establishing another Poke Bar restaurant within 5 miles of Poke Bar Lewers, without first obtaining Plaintiff's written consent.

48.    Plaintiff has not consented and does not consent to Defendant JB granting a license for a Poke Bar restaurant or establishing another Poke Bar restaurant within 5 miles of Poke Bar Lewers.

49.    Defendant JB materially breached the License Agreement by allowing Defendant Lim to open a second Poke Bar Hawaii location (Poke Bar Waikiki), register the tradename "Poke Bar Waikiki", use the "POKÉ BAR" name in advertisements for Poke Bar Waikiki, and use the Poke Bar logo in advertisements for Poke Bar Waikiki, all without first obtaining Plaintiff's written consent.

50.    The obligation of Defendant JB to seek the prior written consent of Plaintiff has not been waived, released or otherwise discharged.

51.    Under the terms of the License Agreement, Defendant JB agreed to maintain a bona fide interest in the success of the Poke Bar Lewers business.

52.    Defendant JB materially breached the License Agreement by allowing Defendant Lim to register the tradename "Poke Bar Waikiki", establish a second Poke Bar restaurant in Hawaii within five (5) miles of Poke Bar Lewers, use the "POKÉ BAR" name in advertisements for Poke Bar Waikiki, and use the Poke Bar logo in advertisements for Poke Bar Waikiki; all of which are in support of a business in direct competition with Poke Bar Lewers and contrary to Defendant JB maintaining a bona fide interest in the success of Poke Bar Lewers.

53.    Under the terms of the License Agreement, Defendant JB agreed to provide training, supervision, and assistance as to the operation of Plaintiff's Poke Bar Lewers business.

54.    Defendant JB materially breached the License Agreement, by, among other things, providing no training, supervision, or assistance in the most significant operation of Poke Bar Lewers: the sourcing and handling of fresh fish on a daily basis.

55.    As a direct and proximate result of these and other breaches of the License Agreement by Defendant JB, Plaintiff is damaged in an amount to be proven at the trial in this matter.

56.     Defendant JB's material breaches of the License Agreement entitles Plaintiff to rescission of the License Agreement and for restitution of all amounts paid to Defendant JB under the License Agreement, including the license fee and all monthly royalty payments, prejudgment interest and attorneys' fees and costs.

**COUNT II**
**(Unfair or Deceptive Acts or Practices – Defendant JB)**

57.     The allegations contained in paragraphs 1 through 56 herein are realleged and incorporated by reference.

58.     By permitting the Poke Bar Waikiki to open without Plaintiff's prior written consent, Defendant JB violated HRS § 482E-6(2)(E), which prohibits the franchisor from establishing a similar business within the exclusive territory of Plaintiff.

59.     The commission of any unfair or deceptive acts or practices or unfair methods of competition prohibited by HRS § 482E-6, constitutes an unfair or deceptive act or practice under HRS Chapter 480.

60.     Plaintiff is a natural person who committed money towards Poke Bar Lewers, including licensing and royalty payments to Defendant JB, as a personal investment to support his family.

61.     As a direct and proximate result of Defendant JB's unfair and

deceptive acts and practices, Plaintiff has been damaged in amounts to be proven at the trial, and is entitled to rescission of the License Agreement and for restitution of all amounts paid to Defendant JB under the License Agreement.

62.    Defendant JB's unfair and deceptive acts and practices entitles Plaintiff to treble damages and attorneys' fees and costs pursuant to HRS Chapter 480.

**COUNT III**
**(Breach of Implied Covenant of Good Faith and Fair Dealing - Defendant JB)**

63.    The allegations contained in paragraphs 1 through 62 herein are realleged and incorporated by reference.

64.    Defendant JB materially breached the License Agreement and its implied covenant of good faith and fair dealing.

65.    Plaintiff is entitled to damages for Defendant JB's material breach of its implied covenant of good faith and fair dealing, in amounts to be proven at trial, plus prejudgment interest and attorneys' fees and costs.

**COUNT IV**
**(Failure to Provide Offering Circular – Defendant JB)**

66.    The allegations contained in paragraphs 1 through 65 herein are realleged and incorporated by reference.

67.    Contrary to the requirements of HRS § 482E-3(a), Defendant JB sold a franchise to Plaintiff without first providing Plaintiff with a copy of the

offering circular at least seven days prior to the sale of the franchise.

68.    Contrary to the requirements of HRS § 482E-3(c), Defendant JB failed to file a copy of the offering circular with the Director of Commerce and Consumer Affairs, State of Hawaii.

69.    Plaintiff is informed and believes, and on that basis allege, that Defendant JB's failure to provide and file the offering circular was willful.

70.    As a direct and proximate result of Defendant JB's failure to provide and file the offering circular, Plaintiff was denied a full and complete information regarding the Poke Bar franchise.

71.    Pursuant to HRS § 482E-9, Defendant JB's failure to comply with HRS Chapter 482E entitles Plaintiff to sue for damages, rescission of the License Agreement, and other relief as the Court may deem appropriate.

## COUNT V
### (Tortious Interference – Defendant Lim)

72.    The allegations contained in paragraphs 1 through 71 herein are realleged and incorporated by reference.

73.    Under the License Agreement, a valid contract and business relationship exists, and existed at all relevant times, between Plaintiff and Defendant JB.

74.    Defendant Lim had knowledge of said contract and business

relationship between Plaintiff and Defendant JB, and even accepted substantial sums of money from Plaintiff in support of the same.

75.     After Plaintiff declined Defendant Lim's proposal to open a second Poke Bar location in Waikiki, Defendant Lim purposefully caused Bay Hae Inc. to register the tradename "Poke Bar Waikiki" to facilitate his opening and operation of Poke Bar Waikiki within the exclusive territory granted to Plaintiff pursuant to the License Agreement.

76.     Defendant Lim's actions represent purposeful interference with the terms of the License Agreement and Plaintiff's business relationship with Defendant JB, and have impaired Plaintiff's ability to exercise his right to an exclusive territory.

77.     As a result of Defendant Lim's actions, Plaintiff has suffered damages in amounts to be proven at trial.

**COUNT VI**
**(Injunctive Relief – Defendant JB)**

78.     The allegations contained in paragraphs 1 through 77 herein are realleged and incorporated by reference.

79.     Plaintiff is entitled to preliminary injunctive relief enjoining Defendant JB from granting a license for any Poke Bar restaurant and/or allowing the establishment of any restaurant using the Poke Bar name within 5 miles of

Poke Bar Lewers, including Poke Bar Waikiki.  Further, the status quo should be maintained during the pendency of the action to allow Plaintiff to continue his contractual right to operate the only Poke Bar restaurant within 5 miles of Poke Bar Lewers.

80.    Plaintiff is likely to prevail on the merits of his claim.  The License Agreement is clear: Defendant JB is restricted from granting a license for any Poke Bar restaurant and from allowing the establishment of any Poke Bar restaurant within 5 miles of Poke Bar Lewers.

81.    The balance of damages favors issuance of an injunction. Defendant JB will not be harmed by complying with the terms of the License Agreement, under which it accepted substantial sums of money from Plaintiff.  On the other hand, Plaintiff will be substantially harmed by the loss of business Poke Bar Lewers will sustain if any Poke Bar, including Poke Bar Waikiki, is allowed to compete in Poke Bar Lewers' exclusive territory, which threatens Poke Bar Lewers very existence.

82.    Public interest supports granting an injunction in support of Plaintiff's rights and in prevention of Defendant JB's unfair and deceptive acts and practices.

83.    Plaintiff has no plain, speedy or adequate remedy at law. Unless Defendant JB is enjoined, Plaintiff cannot stop Defendant JB from granting

licenses and allowing for the establishment of Poke Bar locations within Plaintiff's exclusive territory.  Further, monetary damages are inadequate to fully compensate Plaintiff because of the difficulty in quantifying lost opportunity costs and harm to business goodwill and other relationships.

84.    A preliminary injunction should therefore issue, enjoining Defendant JB from granting a license for any Poke Bar restaurant and/or allowing the establishment of any Poke Bar within 5 miles of Poke Bar Lewers, including Poke Bar Waikiki.

## COUNT VII
### (Injunctive Relief – Defendant Lim)

85.    The allegations contained in paragraphs 1 through 84 herein are realleged and incorporated by reference.

86.    Plaintiff is entitled to preliminary injunctive relief enjoining Defendant Lim from operating any Poke Bar restaurant within 5 miles of Poke Bar Lewers, and including a prohibition on Defendant Lim causing or allowing Bay Hae Inc. to operate any Poke Bar restaurant within 5 miles of Poke Bar Lewers. Further, the status quo should be maintained during the pendency of the action to allow Plaintiff to continue his contractual right to operate the only Poke Bar restaurant within 5 miles of Poke Bar Lewers.

87.    Plaintiff is likely to prevail on the merits of his claim.  The

License Agreement is clear: there can be no license for any Poke Bar restaurant within 5 miles of Poke Bar Lewers without Plaintiff's prior written consent.

88.    The balance of damages favors issuance of an injunction. Defendant Lim will not be harmed by respecting Plaintiff's contractual rights.  On the other hand, Plaintiff will be substantially harmed by the loss of business Poke Bar Lewers will sustain if any Poke Bar, including Poke Bar Waikiki, is allowed to compete in Poke Bar Lewers' exclusive territory, which threatens Poke Bar Lewers very existence.

89.    Public interest supports granting an injunction in support of Plaintiff's contractual rights and in prevention of the facilitation of unfair and deceptive acts and practices.

90.    Plaintiff has no plain, speedy or adequate remedy at law. Unless Defendant Lim is enjoined, Plaintiff cannot stop him from operating Poke Bar locations within Plaintiff's exclusive territory.  Further, monetary damages are inadequate to fully compensate Plaintiff because of the difficulty in quantifying lost opportunity costs and harm to business goodwill and other relationships.

91.    A preliminary injunction should therefore issue, enjoining Defendant Lim from operating any Poke Bar restaurant within 5 miles of Poke Bar Lewers, and including a prohibition on Defendant Lim causing or allowing Bay Hae Inc. to operate any Poke Bar restaurant within 5 miles of Poke Bar Lewers.

## COUNT VIII
## (Punitive Damages – All Defendants)

92.     The allegations contained in paragraphs 1 through 91 herein are realleged and incorporated by reference.

93.     Defendants JB and Lim have profited substantial sums of money in Plaintiffs' repayment of the Initial Loans, which they understood Plaintiff was using towards opening Poke Bar Lewers.

94.      Plaintiff has paid substantial sums of money in monthly royalty payments to Defendant JB for the ability to operate Poke Bar Lewers within a 5-mile exclusive territory.

95.     Notwithstanding the License Agreement's explicit restriction on Defendant JB's ability to grant Poke Bar licenses or establish Poke Bar restaurants within 5-miles of Poke Bar Lewers, and HRS § 482E-6(2)(E)'s prohibition on Defendant JB establishing a similar business within Plaintiff's exclusive territory, Defendant JB allowed Defendant Lim to cause Hay Bae Inc. to register the tradename "Poke Bar Waikiki" and use the Poke Bar name within Plaintiff's exclusive territory.

96.     Despite having received substantial profits from Plaintiff's repayment of the Initial Loans used to open Poke Bar Lewers, and despite being a Poke Bar franchisee himself with full knowledge of the value of an exclusive

territory to a franchisee, Defendant Lim caused Hay Bae Inc. to register the tradename "Poke Bar Waikiki" to facilitate his opening of Poke Bar Waikiki within Plaintiff's exclusive territory.

97.    Defendants' actions were done willfully, wantonly, and with conscious disregard of Plaintiff's rights.

98.    An award of punitive damages against Defendants is warranted to deter such conduct.

WHEREFORE, Plaintiff prays for relief as follows:

A. That judgment in favor of Plaintiff and against Defendants, jointly and severally, be entered for general, restitution, special, punitive, and treble damages in amounts to be proven at trial;

B. That declaratory judgment be entered in favor of Plaintiff and against Defendant JB as to Defendant JB's material breach of the License Agreement;

C. That declaratory judgment be entered in favor of Plaintiff and against Defendant JB as to Defendant JB's non-compliance with the provisions of HRS § 482E-3;

D. That this Court issue an order rescinding the License Agreement;

E. That a preliminary injunction be issued, enjoining Defendant JB from granting a license for any Poke Bar restaurant and/or allowing the

establishment of any Poke Bar within 5 miles of Poke Bar Lewers;

   F. That a preliminary injunction be issued, enjoining Defendant Lim from operating any Poke Bar restaurant within 5 miles of Poke Bar Lewers, and including a prohibition on Defendant Lim causing or allowing Bay Hae Inc. to operate any Poke Bar restaurant within 5 miles of Poke Bar Lewers;

   G. That the Court fix and determine just and reasonable attorneys' fees and costs incurred by Plaintiff and award same to Plaintiff;

   H. That the Court award pre-judgment and post-judgment interest; and

   I. For such other and further relief as the Court deems just, equitable and proper.

//

//

//

DATED:  Honolulu, Hawaii, January 27, 2023.


/s/ *Christian P. Porter*
CHRISTIAN P. PORTER
JASON K. ADANIYA
TIFFANY J. AUKAI
DAVID Y. SUH

Attorneys for Plaintiff
JAEWOO CHUNG